UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NEWTOWN BOARD OF EDUCATION | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:04cv1762 (PCD) |
| | : | |
| T.M., by and through his Parents, | : | |
| Mr. & Mrs. M., | : | |
|     Defendants. | : | |

## RULING ON PENDING MOTIONS

This case originated as Plaintiff's appeal from an order of a hearing officer which placed the child, T.M., who undisputedly is a special needs child, in a private school at Plaintiff's expense to satisfy the child's entitlement to a free appropriate public education ("FAPE") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, et seq. Pursuant to the hearing officer's order of September 7, 2004, T.M. has been at Ben Bronz Academy ("BBA") through June of 2005. Plaintiff now claims that on May 4, 2005 a planning and placement team ("PPT") met to develop an individual education plan ("IEP") for T.M. for the school year 2005-2006. T.M.'s mother attended and expressed disagreement with a plan that would have returned T.M. to the Newtown Middle School and not continue his placement at BBA. The PPT adopted an IEP that provided for implementation of a program for T.M. at the Newtown Middle School, and thus did not provide for T.M. to continue attending BBA in September 2005. T.M.'s parents were notified of that IEP but have not sought a due process review of it. Nonetheless, T.M. did go to BBA in September and continues there. When Plaintiff found it was being billed for the BBA attendance, apparently not having missed T.M. at the middle school, it sought to implement the 2005-2006 IEP by notifying the parents and BBA

that it no longer regarded the 2004-2005 IEP to be in effect and would not honor BBA bills. Defendants thereupon moved to require Plaintiff to comply with the 2004-2005 IEP and the Court ordered Plaintiff to do so to prevent any disruption of T.M.'s education and pursuant to the "stay-put" provision, 20 U.S.C. § 1415(j).  The Court was not advised of adoption of a new, 2005-2006, IEP.  Plaintiff has now moved for reconsideration of that order. [Doc. No. 37.]  The merit of that order will be reconsidered, since the Court dealt with Defendant's motion to "stay-put" on an emergency basis and Plaintiff was not then accorded an opportunity to be heard.

With respect to the appeal which triggered this action, the court ordered the parties to file cross-motions for summary judgment, as it appeared that the dispute could properly be resolved on the record.  It appears that Plaintiff served a motion for summary judgment and has now filed same with the court.  Defendants responded thereto and cross-moved with a memorandum, not filed until November 2, 2005, which opposed Plaintiff's motion and supported their cross-motion for summary judgment.

**The Stay-Put Order**

The resolution of the issues presented in this case is properly focused on the nature of an IEP.  Plaintiff appears to regard an IEP as durational, arguing that "[e]ach IEP is separate and distinct."  (Pl.'s Mem. Opp. Def.'s Mot. Sum. J. at 11.)  Thus, it contends that the 2004-2005 IEP has been supplanted by an IEP derived from a May 4, 2005 PPT meeting.  On that premise, it suggests that it is no longer obliged to place and pay for TM's attendance at BBA. Incongruously, it has not terminated its appeal from the Hearing Officer's decision as to the IEP in effect for the school year 2004-2005.  If, as Plaintiff argues, that IEP was vitiated by the May 4, 2005 PPT decision, then the appeal which pertained to the earlier version of the IEP was rendered moot and

should have been terminated.

However, an IEP is not durational.  The entire thrust of section 1414 characterizes an IEP as continuing.  This is clear from sections 1414(d)(4)(A)(i) and (ii), which require the IEP Team to review "the child's IEP periodically, but not less than annually to determine whether the annual goals for the child are being achieved; and "revise[] the IEP as appropriate."  That language is not consistent with an IEP being for a limited period, claimed by Plaintiff to be for a school year.  Rather, the IEP as originally developed is to be reviewed to be sure it continues to be geared to achieving the appropriate goals for the child.  Thus, a review could find the IEP to be appropriate to achieve the goals and provide a FAPE.  While the May 5, 2005 PPT may properly have determined a new program was appropriate for that purpose and a due process hearing might properly be requested to determine the propriety of changes in the IEP, including removal of the BBA requirement, such a determination is not reviewed at this time.  That does not alter the fact of T.M.'s BBA placement, which remains under review in the form of this appeal of the hearing officer's order so requiring.  Thus, the last placement at BBA ordered by the hearing officer triggered the "stay-put" provision, which remains in effect "until all such proceedings [as provided by § 1414] have been completed."  See 20 U.S.C. § 1414(j).

On the foregoing basis, the Court's order of October 24, 2005 validly enforced the hearing officer's placement at BBA pursuant to the "stay-put" requirement.  That does not preclude Plaintiff and/or Defendants from seeking a review of the revision in the IEP by the May 5, 2005 PPT as it may alter the appropriate program to insure T.M.'s entitlement to a FAPE is accommodated.

Accordingly, upon reconsideration of its October 24, 2005 order, and after review of the

parties' memoranda, the order will stand and T.M.'s placement at BBA will remain in effect as so ordered until further order of the Court.

**Summary Judgment**

Both Plaintiff and Defendants have moved for summary judgment with respect to the order of the hearing officer. The appeal challenged four aspects of the order: (1) that the IEP failed to provide T.M. with a FAPE and that Plaintiff was deficient in complying with the IEP; (2) that placement at BBA is appropriate and the least restrictive placement where the special services necessary for T.M.'s FAPE may be provided; (3) that Plaintiff failed to provide special services appropriate for T.M.'s FAPE; and (4) that a "stay-put" order pertained to the PPT's April 5, 2004 IEP. Item (3) and the second aspect of item (1) appear to be moot and item (4) is resolved by the foregoing decision with respect to the Court's October 24, 2005 order. Thus, this ruling will be directed to items (1) and (2), the latter being the essential basis for the finding of a failure to provide T.M. with a FAPE.

A FAPE essentially has two aspects. One is the program of services which are necessary and intended to insure that a disabled child is provided with a FAPE. The second is placement of a disabled child in the least restrictive environment in which necessary services can be provided. The services required for TM are not at issue except as the hearing officer determined that Plaintiff was deficient in providing all the services called for. Thus, the issue over which the parties are at odds is the placement which Plaintiff claims, at its middle school, is the least restrictive environment while Defendants assert that such is not the case and the hearing officer's finding BBA to be the least restrictive environment is supported by the record at the due process hearing and should be sustained.

Consideration of the issues presented starts with the concept that a disabled child is best educated in company with children who are not disabled, i.e., mainstreamed.  "To the maximum extent appropriate, children with disabilities . . . [should be] educated with children who are not disabled, and . . . removal of children with disabilities from the regular education environment occurs only when the nature or severity of the disability . . . is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A).  See Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998); 34 C.F.R. § 300.550 (2005).  The question is whether the IEP adopted by the education specialists, i.e., Plaintiff, given due deference by the Court which, though charged with independently reviewing the determinations reached administratively, lacks specialized knowledge and experience in educational matters, Board of Education v. Rowley, 458 U.S. 176, 205-06 (1982), was reasonably calculated to comply with IDEA and the required provision of a FAPE.  M.C. v. Voluntown Board of Education, 226 F.3d 60, 65 (2d. Cir. 2000).  The hearing officer ruled that the IEP's placement of T.M. in the middle school did not comply.  Thus, the question on review of that ruling is whether the record before the hearing officer, as here supplemented, can be found to support the deficiency that was relied on to overrule the IEP placement as noncompliant with IDEA such that the child's educational needs would not there be appropriately addressed.  If so, the second question is whether the same record supports the BBA placement ordered by the hearing officer as the least restrictive environment.

An IEP must reasonably provide the disabled child with the opportunity to receive the education to which he/she is entitled, including the services that are necessary to achieve that goal.  The measure of that compliance is whether the IEP, by providing the educational

5

experience embodied therein, including the special services tailored to the child's particular needs, is "calculated to enable the child to achieve passing marks and advance from grade to grade." Rowley, 458 U.S. at 203-04.  Thus, the test is not whether the IEP brings the child to parity in educational performance with his/her peers, but whether he/she is provided with the opportunity to absorb the learning which would permit his/her objectively satisfactory progress through the educational program by providing a meaningful educational experience. Id. Adherence of a hearing officer to a test of an IEP based on elimination of a gap between the disabled child's educational progress and that of his/her peers has not been sustained.

       The hearing officer noted areas of T.M.'s demonstrated difficulties in terms of "cognitive impediments to learning" and discussed the deficiencies in his IEP.  The holding further notes the manner in which a BBA program would address T.M.'s learning impediments which were found not adequately addressed in the IEP.  It is in that context that the IEP would be unlikely to enable T.M. to "close the gap." (Administrative Record-1 at 4.)   That is not seen as a test of T.M.'s progress relative to that of his peers but rather relative to T.M.'s learning limits or impediments. The Administrative Record refers to an evaluation of the testimony of Dr. Theis, much relied on by Plaintiff, who noted some inadequacy in the IEP coping with T.M.'s educational needs. Tantamount to a concession of some shortcomings, Plaintiff's Director of Pupil Services noted agreement to modify the IEP "to include the recommendations of Dr. Theis."  (Id. at 6.) Plaintiff's shortcomings in compliance with IEPs was also noted.  Thus, the hearing officer doubted Plaintiff's full adherence to IEPs and found that the two factors resulted in a failure on Plaintiff's part to provide the FAPE to which T.M. was entitled.  (Id.)  On that basis, the hearing officer found that T.M.'s least restrictive environment, at which the program necessary to provide

T.M. with his FAPE was not Plaintiff's middle school, per the IEP, but at BBA.

The foregoing reflects the hearing officer's proper application of the Rowley test and record foundation for the conclusion that an educational program including special services compliant with IDEA would be provided at BBA as the least restrictive environment, and not in Plaintiff's middle school per the IEP.  (Id. at 6-7.)  That conclusion is not vitiated by Plaintiff's supplemental evidence reflecting T.M.'s experiencing one year of growth at BBA, an after the fact observation which does not counter the hearing officer's findings with respect to the IEP as not appropriate.  Plaintiff would focus on the goals and methods in the adopted IEP to the disregard of the hearing officer's consideration of prospects for actual implementation.  As noted above, the hearing officer found not only deficiencies in the IEP as adopted, but also in its past implementation.  A meaningful education experience for T.M. lay not merely in the paper description of goals and methods in the IEP but in what was provided that afforded him, actually and not merely prospectively, a meaningful educational experience.

Plaintiff also seeks a direction to the hearing officer to modify the IEP.  While the statute authorizes the hearing officer to modify the IEP, as was done to the extent of T.M.'s placement at BBA in lieu of the middle school, there is no basis for the Court to order the hearing officer to modify the IEP in accordance with Plaintiff's wishes.  As the record validly sustains the findings of the hearing officer, including the determination that as modified by the placement at BBA, the decision of the hearing officer will stand.  That judgment reflects a sufficiently strong view of the deficiencies in the IEP and Plaintiff's implementation of it to overcome the statutory preference for mainstreaming a child with a disability and order T.M.'s placement at BBA as the least restrictive environment where a program to meet his needs would most likely be provided.  That

was the judgment of a hearing officer who oversaw the creation of the administrative record and heard the witnesses at the due process hearing and who applied expertise to arrive at the appropriate program that would meet T.M.'s educational needs and the FAPE obligation. The determination that there was a risk an IEP would not be fully implemented by Plaintiff's personnel appears to have been based on the hearing officer's findings of such being a problem prior to the due process hearing and the finding of a future possible difficulty was thus not without foundation. The Court will defer to that decision and the findings on which it was based and not rewrite the IEP. Nor will the issue be regarded as an enforcement proceeding but rather a review of the hearing officer's determination of the appropriate IEP.

Indeed, adherence to the IEP as modified by the hearing officer, for the school year 2004-2005, is academic, as that school year has passed. The Court's order enforcing the "stay-put" provision avoids a disruption in T.M.'s education during what may be a protracted administrative and judicial review, particularly in the present context. See Tenn. Dep't of Mental Health and Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir. 1996). It also avoids what may be regarded as the Board's unilateral change in T.M.'s placement for 2005-2006. The Board and Defendants may frame the issue of T.M.'s appropriate placement by such further proceedings as they choose in relation to the IEP assertedly properly adopted on May 4, 2005. To ignore the "stay-put" provision as it is based on the IEP found appropriate by the hearing officer, in effect enforcing the May 4, 2005 adopted IEP, would assert jurisdiction by this Court when the provided, and requisite, due process would thereby be preempted. This the court may not do as presentation to the court, by the statutory scheme, is for the purpose of reviewing the decision at a due process hearing. Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195,199 (2d

Cir. 2002); see also 20 U.S.C. § 1415(i)(2); Hope v. Cortines, 69 F.3d 687, 688 (2d Cir. 1995). This does not appear to be a case that falls within any of the three exceptions to an exhaustion rule.  See Mrs. W. v, Tirozzi, 832 F.2d 748, 756 (2d. Cir. 1987).  Thus, only by enforcing the "stay-put" provision until the BBA placement is properly reviewed, at the instance of either party, is T.M. afforded the benefit of a continuity in his education as is the intent of section 1415(j) and a protection of his rights as a party of particular concern to the court. See Murphy, 297 F.3d at 201 (citing Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123 (2d. Cir. 1998)).

In short, the last placement decision for T.M. is the hearing officer's decision favoring BBA, a decision under appeal herein.  That constitutes T.M.'s "current placement" for "stay-put" purposes.  Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz, 290 F. 3d 476, 482 (2d Cir. 2002).  Plaintiff is not foreclosed from seeking vindication of its alteration in T.M.'s placement as per its May 4, 2005 IEP, but may not do so here absent a due process hearing, an option also open to Defendants.  Plaintiff may not avoid the "stay-put" by "the mere proposal of a new IEP." Id. at 483.  Defendants' failure to invoke the right to review of the May 4, 2005 IEP may, at some point, constitute a waiver of their right to a due process review and an agreement to that IEP as a change in T.M.'s placement compliant with Plaintiff's FAPE obligation.

**Conclusion**

For the foregoing reasons, Plaintiff's appeal of the hearing officer's modification of T.M.'s IEP and placement at BBA is overruled and judgment with respect to said appeal shall enter for Defendants.

SO ORDERED.

Dated at New Haven, Connecticut, December  2 , 2005.

/s/<br>
Peter C. Dorsey<br>
United States District Judge